UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



CARDISSIA WAITES,

        Plaintiff,

v.                                                    Civil No. 2:15cv353

WELLS FARGO BANK, N.A.,

        Defendant.

## MEMORANDUM OPINION and ORDER

This matter is before the Court on an amended motion to dismiss, filed by Wells Fargo Bank, N.A., ("Defendant" or "Wells Fargo") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 13. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).

### A.

The instant civil suit was initially filed in the Circuit Court for the City of Norfolk, Virginia. It was thereafter removed to this Court pursuant to the Court's diversity jurisdiction, and neither the propriety of removal, nor this Court's jurisdiction, are in question.

As set forth in the civil complaint filed by Cardissia Waites ("Plaintiff"), the instant action arises out of

Plaintiff's failure to timely pay her mortgage payments, which ultimately led to the foreclosure of her home. Compl. ¶¶ 6-7, ECF No. 1-2. After Plaintiff fell more than three months behind on her payments to Defendant, on "April 25, 2010, Plaintiff and Defendant executed a 'Special Forbearance Agreement' where Plaintiff would be allowed to make monthly reduced payments of $579.41 beginning May 15, 2010." Id. ¶ 8. The forbearance period was scheduled to end on September 15, 2010, at which time all past due payments (approximately $20,000) were due. Id. ¶ 8 & Ex.B. In conjunction with signing the forbearance agreement, Plaintiff submitted a check to Defendant far exceeding the required $ 579.41 forbearance payment, but due entirely to Defendant's error processing such check, the timely payment was rejected. Id. ¶¶ 10-16. Mistakenly believing that Plaintiff lacked sufficient funds to cover the first forbearance check, Defendant declared in a written notice dated May 28, 2010, that Plaintiff had failed to comply with the terms of the forbearance agreement. Id. ¶ 17 & Ex.F. Defendant therefore resumed foreclosure activities, rejected Plaintiff's subsequent attempts to make additional payments under the terms of the forbearance agreement, and ultimately caused the foreclosure sale of Plaintiff's home on July 7, 2010. Id. ¶¶ 17-22.

Plaintiff filed the instant action on July 7, 2015, exactly five years after the foreclosure sale, alleging violations of

the note/deed of trust (Counts I and III) and violations of the forbearance agreement (Counts II and IV). Defendant thereafter removed the case to this Court and filed a motion to dismiss. Defendant was subsequently given leave to file the amended motion to dismiss currently pending before this Court, and such motion is now fully briefed and ripe for adjudication.

### B.

Neither party's briefing calls into question the well-established 12(b)(6) standard of review, which permits dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, a complaint must include enough facts for a claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In determining the plausibility of a claim, district courts are required to assume that all well-pled factual allegations are true "even if doubtful in fact," id. at 555, and must also "draw all reasonable inferences in favor of the plaintiff," Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks and citation omitted).

Although the Court must accept all well-pled factual allegations, a plaintiff's legal conclusions are not similarly accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing

<u>Twombly</u>, 550 U.S. at 555). Additionally, while it is generally not appropriate to consider the viability of affirmative defenses at the 12(b)(6) stage, in "relatively rare circumstances" where all of the facts "necessary to the affirmative defense clearly appear on the face of the complaint," an affirmative defense, including a defense seeking to demonstrate that a case is time-barred, may be resolved on a motion to dismiss. <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (internal quotation marks and citation omitted).

## C.

### 1. Statute of Limitations – All Counts

It is undisputed that the five-year limitations period governing Virginia contract actions applies in this diversity action and is further undisputed that Plaintiff filed this case exactly five years from the date of <u>the foreclosure sale</u> of her home. <u>American Inn, L.P. v. Wolf</u>, 28 F. App'x 316, 319 (4th Cir. 2002) (quoting Va. Code Ann. § 8.01-246(2)). However, Defendant's 12(b)(6) motion argues that Plaintiff's own allegations demonstrate that Defendant committed contractual breaches months prior to the foreclosure sale, thus rendering all four counts of Plaintiff's civil complaint untimely. <u>Cf.</u> Va. Code § 8.01-230 (indicating that breach of contract claims accrue and the limitations period begins to run "when the breach of contract occurs in actions ex contractu and not when the

resulting damage is discovered"). Plaintiff responds in opposition to dismissal by arguing that damage is an element of a breach of contract action and that the limitations period did not begin to run in this case until the foreclosure sale occurred because all claimed damages flow from that sale and/or events occurring after such sale.

Initially, the Court highlights its disagreement with Plaintiff's contention that no damages were suffered prior to the date of the foreclosure sale. As effectively argued in Defendant's reply brief, the stated purpose of the parties' forbearance agreement was to permit Plaintiff a defined period of time to resolve or improve her financial situation, during which Defendant promised to accept reduced payments. When Defendant refused Plaintiff's valid and timely payment under the forbearance agreement, "disregarded the Special Forbearance Agreement," "resume[d] foreclosure proceedings" and "refused Plaintiff's subsequent payments . . . under the special forbearance agreement," Plaintiff was surely damaged, at least to a degree, by such breaches. Compl. ¶¶ 17-19.

Notwithstanding the above, "Virginia recognizes that multiple breaches or occurrences can give rise to separate causes of action." Park v. Alcon Surgical, Inc., 991 F.2d 790, 1993 WL 114820, at *3 (4th Cir. 1993) (unpublished table opinion) (citation omitted). The Virginia Supreme Court has

5

explained such concept as follows, "when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 239 (1987). While the Hampton Roads Sanitation case dealt with trespass, "the same principle applies to contracts." Park, 1993 WL 114820, at *4 (citing Burns v. Board of Supervisors, 227 Va. 354, 357, 364 (1984)); cf. Am. Physical Therapy Ass'n v. Fed'n of State Boards of Physical Therapy, 271 Va. 481, 485 (2006) (finding that where each of the challenged acts caused a new and distinct injury they "constituted distinct, separate breaches," and thus, "separate cause[s] of action accrued").

Here, Plaintiff's brief in opposition to dismissal of Counts II and IV highlights the fact that such claims are not limited to alleging breaches of the forbearance agreement based on refusal to accept monthly payments, but also allege that Defendant ignored Plaintiff's continued efforts to perform and wrongly foreclosed on Plaintiff's home prior to the stated expiration of the forbearance agreement. Assuming Plaintiff's factual allegations to be true, and in the absence of proof that the forbearance agreement was effectively voided or terminated by Defendant, Plaintiff has alleged that the foreclosure sale was a separate and distinct breach from Defendant's prior refusals to accept timely monthly payments. Because Plaintiff

alleges separate and distinct acts, causing distinct and differing injuries, Defendant fails at this time to demonstrate that the limitations clock for the first alleged breach necessarily encompasses the later breach occurring the day of the foreclosure sale. Cf. Hampton Roads Sanitation, 234 Va. at 239 (indicating that a distinct wrongful act that inflicts a new injury gives rise to a separate cause of action).[1]

Plaintiff's complaint separately asserts in Counts I and III that Defendant breached the note and deed of trust by foreclosing on her home without first conducting a pre-foreclosure "face-to-face" meeting, as required by relevant Federal Housing Administration (FHA) regulations that were incorporated into the note and deed of trust. Plaintiff asserts in opposition to dismissal that her causes of action on the note and deed of trust accrued on the date of the foreclosure sale because, on that day, Defendant caused her home to be sold in

---

[1] Although not squarely addressed by the parties, this Court's review of the pending motion included consideration of the doctrine of repudiation/anticipatory breach. Bennett v. Sage Payment Sols., Inc., 282 Va. 49, 55-58 (2011). Such doctrine, however, does not dictate that a cause of action accrue at the time of an initial repudiation, but instead generally gives the non-breaching party the option to treat the repudiation as a present breach. Franconia Associates v. United States, 536 U.S. 129, 142-44 (2002). Moreover, here, while not conclusively resolved by the current record, it appears more likely that Defendant did not "repudiate" the forbearance agreement, but instead sought to invoke express termination rights included in such written agreement. However, to the extent Defendant lacked authority to invoke such termination rights, and to the extent Plaintiff continued to perform under the agreement by remitting payments, the current record does not clearly demonstrate that the forbearance agreement was effectively terminated, voided, or otherwise no longer in force on the date of the foreclosure sale.

violation of the contractual terms. Defendant, in contrast, argues that Plaintiff's claims are untimely because the limitations clock started ticking on an earlier date when, pursuant to the FHA regulations, Defendant should have conducted the face-to-face meeting. A review of the relevant FHA regulation reveals that the contemplated date for the face-to-face meeting referenced by Defendant is "within 30 days" after "default occurs in a repayment plan," 24 C.F.R. § 203.604(b), and here, Plaintiff clearly asserts in her complaint that she never defaulted on the forbearance repayment plan.[2] Accordingly, Defendant fails to demonstrate at the 12(b)(6) stage that the record clearly reveals that Plaintiff's claims are untimely.

### 2. "Good Faith and Fair Dealing" – Counts III & IV

Counts III and IV of Plaintiff's complaint purport to assert a claim based on Defendant's breach of the "implied covenant of good faith and fair dealing." Compl. ¶¶ 87, 94. The parties agree that Virginia law governs such claims and further agree that, under Virginia law, such claims sound in contract, not in tort. Defendant, however, asserts that Virginia law recognizes a claim for breach of such implied covenant only in cases governed by the Uniform Commercial Code

---

[2] The Court rejects Defendant's contention that "default occurs on a repayment plan" irrespective of the reason that a payment is missed, especially when the Plaintiff expressly alleges that payments were timely and properly submitted and the Defendant wrongly refused to accept such payments.

("U.C.C."), which does not apply to transfers in realty. ECF No. 14, at 6. Notwithstanding Defendant's identification of federal district court cases that have held that Virginia does not recognize such a claim outside of the U.C.C. context,[3] this Court finds more persuasive the opposing line of cases, which rely on Fourth Circuit precedent interpreting Virginia law. See Wolf v. Fed. Nat. Mortg. Ass'n, 512 F. App'x 336, 345 (4th Cir. 2013) ("[I]n Virginia, every contract contains an implied covenant of good faith and fair dealing." (quoting Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009))); Land & Marine Remediation, Inc. v. BASF Corp., No. 2:11cv239, 2012 WL 2415552, at *11 (E.D. Va. June 26, 2012) ("The United States Court of Appeals for the Fourth Circuit has recognized that contracts governed by Virginia law generally contain an implied covenant of good faith and fair dealing." (citing Va. Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 541-42 (4th Cir. 1998))); Stoney Glen, LLC v. S. Bank & Trust Co., 944 F. Supp. 2d 460, 465, n.6 (E.D. Va. 2013) (explaining that, while "Virginia law on the implied duty of good faith and

---

[3] Page six of Defendant's opening brief erroneously attributes a quote from a federal district court to the Virginia Supreme Court. See Harrison v. US Bank Nat. Ass'n, No. 3:12-CV-00224, 2012 WL 2366163, at *2 (E.D. Va. June 20, 2012) (quoting Greenwood Assocs., Inc. v. Crestar Bank, 248 Va. 265, 270 (1994)). While this Court must apply the holdings of the Virginia Supreme Court, the Greenwood Associates opinion does not squarely address the existence of an implied covenant outside the U.C.C. context, but instead rejects the application of the U.C.C. covenant to a case in which the U.C.C. was plainly inapplicable.

fair dealing is not exceptionally clear . . . the Fourth Circuit and this Court have been clear on the duty existing in all contracts," and such prior rulings will be followed "absent an intervening Virginia decision"). Accordingly, to the extent Defendant seeks dismissal of Counts III and IV on the grounds that this case falls outside of the U.C.C., Defendant's motion is denied.[4]

D.

For the reasons set forth above, Defendant's Rule 12(b)(6) amended motion to dismiss is **DENIED**. ECF No. 13.[5]

The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

/s/ _[signature]_
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 16 , 2016

---

[4] As clarified in the undersigned judge's Land & Marine opinion, the implied covenant applies to the exercise of contractual discretion, not the exercise of an explicit contractual right. Land & Marine, 2012 WL 2415552, at *11-13; cf. Ward's Equip., Inc. v. New Holland N. Am., Inc., 254 Va. 379, 385 (1997). This Court does not evaluate the viability of Plaintiff's claims on this basis as the matter was not raised in the pending motion.

[5] Consistent with this Court's general practice of encouraging counsel to consider mitigating risks by opening a dialogue at the earliest possible point in a case to determine whether settlement is a possibility, the current record suggests that such a conversation may be beneficial to both parties to this case.